UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNIPRES U.S.A., INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:23-cv-00862 |
| | ) | Judge Aleta A. Trauger |
| v. | ) | |
| | ) | |
| ROBERT A. NEYENHAUS, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM & ORDER

Robert A. Neyenhaus has filed a Second Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Doc. No. 15), to which Unipres U.S.A., Inc. ("Unipres") has filed a Response (Doc. No. 16), and Neyenhaus has filed a Reply (Doc No. 18). For the reasons set out herein, the motion will be granted in part and denied in part.

## I. BACKGROUND[1]

Unipres is a Tennessee-based company that "manufactures automobile parts, primarily stamped and welded steel parts." (Doc. No. 11 ¶ 1.) Neyenhaus, who is a resident of Kentucky, began working for Unipres in 2014. In 2018, he was given the title of General Manager of Quality, Maintenance, and Engineering, in which capacity he was responsible for "overseeing the technical side of Unipres's business." (*Id.* ¶¶ 6–9.) He was promoted again the next year, and his title was changed to Director and General Manager of Quality, Engineering and Plant Maintenance. (*Id.* ¶¶ 10–11.)

---

[1] The facts are taken primarily from the Amended Complaint (Doc. No. 11) and are accepted as true for the purposes of the Motion to Dismiss.

On October 5, 2020, Unipres received an unexpected bill for repairs to a large piece of its equipment—specifically, a 2017 Kubota SVL75-2HWC Skid Steer[2]—in Scottsdale, Kentucky, despite the fact that there was no apparent business purpose for the equipment to be in that location. (*Id.* ¶¶ 17–21.) Unipres investigated the matter and discovered that Neyenhaus had "taken the Skid Steer to his mother-in-law's farm for his own personal or family benefit and not for the benefit of Unipres." (*Id.* ¶ 22.) On March 17, 2021, Unipres terminated Neyenhaus, based on that finding. (*Id.*) After Neyenhaus had been terminated, Unipres discovered another allegedly improper action—the use of Unipres's funds to purchase a honey press for use with Neyenhaus's personal beehives. (*Id.* ¶ 36.)

On August 17, 2023, Unipres filed a Complaint in this court (Doc. No. 1), and then an Amended Complaint (Doc. No. 11). Unipres asserts causes of action for conversion (Count I), fraud (Count II), breach of fiduciary duty (Count III), and unjust enrichment (Count IV). (*Id.* ¶¶ 41–60.) Neyenhaus argues, in his Second Motion to Dismiss,[3] that the court should dismiss the claims as untimely. Specifically, he argues that the claims for conversion, fraud, and unjust enrichment are untimely pursuant to the three-year statute of limitations for property torts set out in Tenn. Code Ann. § 28-3-105, and the breach of fiduciary duty claim is untimely pursuant to the one-year statute of limitations for breaches of fiduciary duty by officers or directors in Tenn. Code Ann. § 48-18-601.

In support of the motion, Neyenhaus purports to "provide evidence that the events described in the Amended Complaint occurred more than three years before the filing of the

---

[2] A skid steer is a "'versatile piece of construction equipment' that is commonly used 'for various construction and landscaping jobs.'" *Williams v. Golden Peanut Co., LLC*, 538 F. Supp. 3d 1227, 1230 n.2 (M.D. Ala. 2021) (quoting BigRentz, Inc., *What is a Skid Steer?*, BIGRENTZ: BLOG (May 22, 2019), https://www.bigrentz.com/blog/what-is-a-skid-steer).

[3] His prior Motion to Dismiss was directed at the original Complaint and was denied as moot based on the filing of the Amended Complaint. (*See* Doc. No. 12.)

initial Complaint" and should have been discovered, through ordinary due diligence, before October 5, 2020. (Doc. No. 15 at 2.) Specifically, he relies on Unipres's own Investigative Report regarding the incident, which suggests, among other things, that Neyenhaus openly discussed the availability of the skid steer for his or others' private use with other Unipres employees. (*See* Doc. No. 15-1 at 6.) Neyenhaus argues that his reliance on that evidence should not lead the court to convert his motion to one for summary judgment, because "the investigation is incorporated by reference in the Complaints and this report is integral to the case."[4] (Doc. No. 15 at 2.)

Unipres opposes the motion in all respects. It argues that there are disputed issues of fact regarding when the relevant causes of action accrued, as well as whether Unipres is entitled to assert tolling by fraudulent concealment. Unipres also disputes Neyenhaus's argument that its breach of fiduciary duty claim is subject to a one-year statute of limitations, arguing that the correct statute of limitations is three years, as with Unipres's other claims. (Doc. No. 16 at 1–2.)

## II. LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must

---

[4] A court may consider matters outside the pleadings without converting a motion to dismiss to a Rule 56 motion if the documents are "incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." 5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed.), *cited in Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

3

determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

### III. ANALYSIS

#### A. Law Governing Rule 12(b)(6) Motions Based on Timeliness

The Federal Rules of Civil Procedure classify noncompliance with a statute of limitations as an affirmative defense, *see* Fed. R. Civ. P. 8(c), meaning that the plaintiff is typically not required to address the issue in its pleaded facts. *See Whitehead v. Sterling Jewelers, Inc.*, 648 F. Supp. 3d 951, 957 (W.D. Tenn. 2023) (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). The likelihood that a court can adequately assess such a defense at the pleading stage is, therefore, low. In recognition of that fact, federal courts typically take the position that "[s]tatute-of-limitations defenses are [more] properly raised in Rule 56 motions" for summary judgment. *Munson Hardisty, LLC v. Legacy Pointe Apartments*, LLC, 359 F. Supp. 3d 546, 567 (E.D. Tenn. 2019) (quoting *Paulin v. Kroger Ltd. P'ship I*, No. 3:14-cv-669, 2015 WL 1298583, at *4 (W.D. Ky. Mar. 23, 2015)).

4

That does not mean, however, that the court can disregard Neyenhaus's argument. It is well-settled that, if it is "'apparent from the face of the complaint that the time limit for bringing the claim[s] has passed,'" then the plaintiff, if it wishes to avoid dismissal, has an "obligation to plead facts in avoidance of the statute of limitations defense." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)). The facts of the Amended Complaint suggest, at the very least, that, insofar as Count III is, in fact, subject to a one-year statute of limitations, then that claim is untimely. The court, accordingly, can consider Neyenhaus's arguments.

The current procedural setting, however, does limit the court's inquiry. The court is not called on to decide, definitively, that the claims that Unipres has raised necessarily are or are not subject to a statute of limitations defense. Rather, the court's role, at this stage, is to determine whether the applicability of such a defense is so clearly established by the pleadings that there is no need to allow the parties to explore the surrounding facts any further.

## **B. The Conversion, Fraud, and Unjust Enrichment Claims (Counts I, II, and IV)**

The parties agree that the applicable statute of limitations for Unipres's claims, other than its claim for breach of fiduciary duty, is three years. Unipres argues that that three-year period could not have begun to elapse until, at the earliest, its October 5, 2020 discovery of the repair invoice. Because Unipres filed suit within three years of that date, it argues, its claims are timely—either because the relevant cause of action did not accrue until October 5, 2020, or because the statute of limitations was tolled until that date under the doctrine of fraudulent concealment.

"[C]laims arising under state law are governed by state tolling doctrine." *Roberson v. Macnicol*, 698 F. App'x 248, 250 (6th Cir. 2017) (citing *eRagan v. Merchs. Transfer &*

5

*Warehouse Co.*, 337 U.S. 530, 533 (1949); *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 423 n.6 (6th Cir. 2007)). "[U]nlike other state courts and the federal courts," Tennessee courts "have declined to recognize the doctrine of equitable tolling in civil cases." *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012) (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 145 n.2 (Tenn. 2001); *Norton v. Everhart*, 895 S.W.2d 317, 321 (Tenn. 1995)). Tennessee does, however, recognize some doctrines that, though more limited in scope, bear on similar issues, including the doctrine of tolling by fraudulent concealment, which a plaintiff can assert by establishing the following:

> (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and (4) that the defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

*Id.* 462–63 (citations and internal quotation marks omitted). As that formulation suggests, "mere silence" can support a finding of fraudulent concealment, if the silent party had a duty to disclose relevant information. *Shadrick v. Coker*, 963 S.W.2d 726, 736 (Tenn. 1998), *accord PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 550 (Tenn. Ct. App. 2012).

The face of the Amended Complaint clearly leaves open the possibility that Neyenhaus—whom Unipres had entrusted with the integrity of its physical operations—fraudulently concealed Unipres's injuries related to his misuse of equipment and funds until October 5, 2020, at the earliest. The only argument for dismissal, therefore, depends on the Investigative Report that Neyenhaus has filed. However, even if the court assumes that it can consider the contents of the report based on the discussion of the investigation in the Amended Complaint—which is

doubtful—doing so would not support dismissal. For one thing, the Amended Complaint does not endorse the report's discussion of all of the underlying facts—only its conclusion regarding Neyenhaus's culpability. Accordingly, even if the contents of the report are, in a sense, incorporated into the Amended Complaint, the specific assertions in the report that would be relevant to timeliness are not, by any reasonable reading, incorporated as assertions of fact for the purposes of Rule 12(b)(6).

Moreover, the allegations in the report do not, in fact, definitively establish that Unipres knew or, through reasonable diligence, should have known of its injury at an earlier date. The report does suggest that, if other Unipres leaders had looked into the matter, they could have discovered that the skid steer was being used for personal projects earlier than they did. Neyenhaus's argument that due diligence would have actually required such an earlier investigation, however, is based on his own inferences drawn from the report. "Whether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a fact question for the jury to determine." *Wyatt v. A-Best, Co.*, 910 S.W.2d 851, 854 (Tenn. 1995) (citation omitted). While some cases may be so clear-cut as to render a defendant entitled to a ruling in his favor regarding fraudulent concealment as a matter of law, the record in this case is nowhere near sufficient to permit such a conclusion at this stage. Because the court cannot assess what due diligence would have required based only on the incomplete facts presented, Neyenhaus's arguments based on the three-year statute of limitations are premature.[5]

## C. Breach of Fiduciary Duty

Unipres's own telling of events would render its breach of fiduciary duty claim untimely pursuant to a one-year statute of limitations, if one applies, even if that statute of limitations was,

---

[5] Because the court finds that Unipres may be entitled to assert fraudulent concealment, there is no need, at this stage, to resolve any dispute between the parties with regard to when the underlying causes of action accrued.

for a time, tolled by fraudulent concealment. The question of whether the court should dismiss that count, therefore, depends on which party is correct about the length of the applicable period for filing. Neyenhaus bases his argument on Tenn. Code Ann. § 48-18-601, which provides:

> Any action alleging breach of fiduciary duties by directors or officers . . . must be brought within one (1) year from the date of such breach or violation; provided, that in the event the alleged breach or violation is not discovered nor reasonably should have been discovered within the one-year period, the period of limitation shall be one (1) year from the date such was discovered or reasonably should have been discovered. In no event shall any such action be brought more than three (3) years after the date on which the breach or violation occurred, except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after the alleged breach or violation is, or should have been, discovered.

Tenn. Code Ann. § 48-18-601. On its face, that would seem to resolve matters in Neyenhaus's favor, as long as one construes Neyenhaus to have been an "officer" or "director" of the company, which his title suggests that he was. Unipres, however, points to Tennessee caselaw that, it suggests, establishes that the court can disregard that statute of limitations, in favor of the three-year statute applicable to property torts, if the gravamen of the alleged breach involves damage to property.

As the Supreme Court recognized in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), "no clause in the Constitution purports to confer . . . upon the federal courts" any "power to declare substantive rules of common law applicable in a state." *Id.* at 78. Federal courts can, and frequently must, apply state law, but the actual substance of that law must be "declared by [that state's] Legislature in a statute or by its highest court in a decision." *Id.* In order to honor those boundaries, the Supreme Court has held that, "[w]hen resolving an issue of state law," a federal court must "look to the final decisions of that state's highest court, and if there is no decision directly on point, then [it] must make" what is sometimes referred to as "an *Erie* guess"—that is, an informed prediction as to how the state's court of last resort, "if presented with the issue,

8

would resolve it." *In re Fair Fin. Co.*, 834 F.3d 651, 671 (6th Cir. 2016) (quoting *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358–59 (6th Cir. 2013)).

Unipres has not identified any caselaw from the Tennessee Supreme Court supporting Unipres's position, and the relevant statutes appear to favor Neyenhaus's. Unipres argues, however, that its argument is supported by decisions of the Tennessee Court of Appeals. Because that court is not a court of last resort, its interpretations are not binding on this court under *Erie*. According to Sixth Circuit caselaw, however, "[a] federal court should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999) (citing *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967)). If the Court of Appeals cases do, therefore, support Unipres's reading of the law, then that interpretation should prevail, in the absence of some significant reason to believe that the Tennessee Supreme Court would decide otherwise.

The cases that Unipres cites do, as it suggests, demonstrate that "courts have found instances . . . in which a three year statute of limitations can apply" to a claim for breach of fiduciary duty, because the gravamen of the underlying claim involved damage to property. *Findley v. Hubbard*, No. M2017-01850-COA-R3-CV, 2018 WL 3217717, at *9 (Tenn. Ct. App. July 2, 2018) (citing *Mike v. Po Grp., Inc.*, 937 S.W.2d 790, 793 (Tenn. 1996)). That does not, however, necessarily mean that the court can disregard Tennessee Code Annotated § 48-18-601, because that statute, on its face, does not apply to all alleged breaches of fiduciary duty—only those against "directors or officers." *Id.* In order for Unipres's claim to proceed, it needs to establish not only that the gravamen of the claim dictates the applicable statute of limitations

9

generally, but that it does so even when Tenn. Code Ann. § 48-18-601 or another comparably on-point statute says otherwise.

The cases that Unipres cites, however, do not support such a holding. Indeed, one of the cases expressly relies on the distinction between ordinary breach of fiduciary duty claims and claims against officers or directors, holding that a three-year statute of limitations was applicable because the underlying claim involved "the fiduciary duty owed by one shareholder to another," such that "the one year statute of limitations regarding breach of fiduciary duty by officers/directors would not apply." *Cent. Sales & Servs., Inc. v. Berg*, No. M2007-00286-COA-R3-CV, 2008 WL 544658, at *5 (Tenn. Ct. App. Feb. 27, 2008) (citation omitted). The other cases are not as explicit, but they involved situations that were, on their face, outside of the scope of Tennessee Code Annotated § 48-18-601. *Findley v. Hubbard*, for example, involved an alleged breach of fiduciary duty in connection with a constructive trust, not a corporation. *See Findley*, 2018 WL 3217717, at *4. The other case, *STJ, L.P. v. Frensley*, No. M2021-00920-COA-R3-CV, 2022 WL 17730538 (Tenn. Ct. App. Dec. 16, 2022), involved an alleged breach by the general partner of a partnership. *STJ*, 2022 WL 17730538, at *6. None of the cited cases, therefore, gives the court any ground for finding an exception to the express rule set out for corporate officers and directors in Tennessee Code Annotated § 48-18-601, which is a part of Tennessee's code governing for-profit business corporations.

The only question remaining, then, is whether the court can conclude, at this stage, that Neyenhaus was an officer or director of Unipres, as that term is used in Tennessee Code Annotated § 48-18-601. The Amended Complaint is somewhat unclear regarding whether Unipres considered Neyenhaus an officer, stating only that Unipres "placed such trust and confidence in [Neyenhaus] that the Company expected [Neyenhaus] . . . to participate in regular

meetings of the officers of the Company." (Doc. No. 11 ¶ 9.) Neyenhaus's express title, however, included the word "director," and the Amended Complaint does not suggest that that term was being used in any idiosyncratic way. Unipres's own briefing, moreover, refers to Neyenhaus's "abuse of authority as a director." (Doc. No. 16 at 19.) The court, therefore, takes it as conceded that Neyenhaus was an officer and/or director of Unipres.

Claims based on his alleged breach of fiduciary duty are, therefore, subject to the one-year statute of limitations set out in Tennessee Code Annotated § 48-18-601. Because Unipres has not identified any basis for concluding that its claim for breach of fiduciary duty is, or might be, timely under that statute, the court will dismiss that claim.

## IV. CONCLUSION

For the foregoing reasons, Neyenhaus's Second Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Doc. No. 15) is hereby **GRANTED** in part and **DENIED** in part. Count III, for breach of fiduciary duty, is hereby **DISMISSED**. The initial case management conference is **RESET** for June 24, 2024 at 3:00 p.m.

It is so **ORDERED**.

---
ALETA A. TRAUGER
United States District Judge